STATE OF MISSOURI, Respondent, v. GALEN E. BISHOP, Appellant.

Kansas City Court of Appeals, May 24, 1886.

1. PRACTICE—PLEADING—MOTION OR PLEA UNDER STATUTE (SECT. 1846, REV. STAT.)—CASE ADJUDGED.—Where, in the case of an information for obstructing a public road, after a plea of not guilty and a continuance of the cause (after being arraigned), and at the next term the defendant filed, what he calls, "his motion to quash the information," which was overruled, and after the jury was sworn, he was again arraigned, against his objection and exception, and

was found guilty, and appeals to this court. *Held,* that, what is denominated by defendant as a motion to quash the information, is in fact merely a plea in abatement. That there was no proof offered to sustain it, and that it is subject to the provisions of section 1846, Revised Statutes, which enacts, that no such plea shall be received by any court, unless the party offering it shall prove the truth of it by affidavit or some other evidence, and that it did not have the effect of withdrawing his original plea of not guilty.

2. ADVERSE OCCUPANCY—EFFECT OF ITS BEING BROKEN.—If adverse occupancy is once broken, the period of limitation begins anew, as though there had been no prior possession.

3. SPECIAL JUDGE—WHERE CHOSEN BY AGREEMENT UNDER SECTION 1880, REVISED STATUTES—CASE ADJUDGED.—Where, under the statute (sect. 1880, Rev. Stat.), a special judge was chosen by agreement, no order for an election was necessary, and where, as in this case, the agreement itself discloses the regular judge's disqualification, there was no necessity of that judge having it entered of record. The statute nowhere requires it. And where, as in this case, the oath taken by the special judge, being the oath prescribed by the state constitution, is of the exact import of the one required by the statute, it is sufficient.

4. ADVERSE USER—ESTOPPEL—EFFECT OF SECTION 3295, REVISED STATUTES.—Where the existence of a road is sought to be established by the state solely by adverse user, as in this case, and evidence is offered as a defence that defendant's grantor was a married woman, who had owned the land while she was a minor, and was a minor when she was married, and that she and her husband conveyed to defendant at a time less than three years before he is charged to have obstructed the road. *Held,* that the evidence was competent and should have been admitted. That the fact that her husband was entitled to the possession of the land, did not affect her, since his action or acquiescence would not estop her. And that the effect of section 3295, Revised Statutes, is to deprive the husband of his common law marital rights, so far as any power to convey during coverture * * * any interest in her real estate, unless by deed, etc. And that this doctrine applies as well to matters set up as estoppel *in pais,* as to deeds or other conveyances. *Mueller v. Kaessmann,* 84 Mo. 318 ; *overruling Kanaga v. Railroad,* 76 Mo. 207.

APPEAL from Buchanan Circuit Court, HON. B. J. CASTEEL, Special Judge.

*Reversed and remanded.*

Statement of case by the court.

The information was for obstructing a public road by building a fence in it.

At a special term, May 28, 1885, defendant pleaded not guilty, and the cause was continued.

At the regular June term, 1885, defendant filed a motion to quash, June 18, 1885, which was overruled.

On June 29, at the same term, the following entry was made: "Comes now the prosecuting attorney, and the defendant being in open court, now here, by agreement of parties in writing, this cause, as well as the six following cases, shall be submitted to B. J. Casteel, as special judge. And comes now B. J. Casteel, and files oath of office as special judge. The oath being as follows: 'B. J. Casteel, being duly sworn, upon oath states that he will support the constitution of the United States and of the state of Missouri, and faithfully demean himself in the office of special judge in the above entitled causes, being seven in number.

'B. J. CASTEEL.'"

The extract following is from the bill of exceptions:

"Defendant having announced ready for trial, the jury was empaneled and sworn to try the case; and thereupon, over defendant's objection, he was arraigned, and, being arraigned, he waived formal arraignment, and pleaded not guilty, and the trial proceeded without defendant's being asked to announce, and without the jury being re-sworn."

The defendant was found guilty and appeals to this court.

His chief grounds for reversal, as stated by his counsel, are:

"1. The jury were not re-sworn after arraignment.

"4. Proof that defendant's grantee, in the spring of 1883, was a woman, who had been married and owned the land since 1868, and that he caused the alleged ob-

struction by fencing this land in the fall of 1883, was excluded.

"5. The first instruction for the state is erroneous.

"6. There is no order for the election of a special judge, nor an entry showing Judge Woodson's disqualication.

"7. The special judge did not take the oath required by law."

Jas. F. Pitt, for the appellant.

I. The defendant was compelled to plead after the jury had been sworn; and the jury was afterwards resworn. This was error. *State v. Montgomery*, 63 Mo. 296.

II. Proof of the establishment of a road upon the quarter section line in 1860, known to the public, and of the fact that Hardin gave fifteen feet for the purpose, would have tended to show that the travel over the uninclosed land was simply permission to avoid a ravine, and was so understood by the public. It was error to exclude it. *Kyle v. Town of Logan*, 87 Ill. 64; *Brinck v. Collier*, 56 Mo. 160; *Onstott v. Murray*, 22 Iowa 457.

III. The doctrine of adverse possession will not be applied to a person under disability, and if the travel began in 1871, defendant was entitled to show that the owner at the time was a married woman, his grantor.

IV. The *first* instruction for the state is erroneous, because it fails to tell the jury that the road must be *continuously* and uninterruptedly traveled for ten years, *acquiesced in by the owner*. Nor is there anything of similar import contained in the instruction. *State v. Walters*, 69 Mo. 465; *State v. Wells*, 70 Mo. 635; *State v. Railroad*, 45 Iowa 139.

V. The special judge had no authority under the agreement. The statute (sect. 1880) requires two entries of record, the *one* showing the disqualification

of the sitting judge ; *second*, an order for a special election. Neither of these was made.

VI. The oath taken by the special judge is not the one required by the statutes, and, therefore, he was not sworn at all and his acts are nullities. *Watt v. Huse*, 38 Mo. 210 ; *Grant v. Holmes*, 75 Mo. 109.

VII. The verdict is against both law and evidence.

ELLISON, J.— I. Defendant's first objection is that he should have been re-arraigned after his motion to quash was overruled, and before the jury was sworn, on the ground that his motion to quash operated as a withdrawal of his plea theretofore entered. It will be observed, from the statement, that he was regularly arraigned and his plea , of not guilty entered at the special term on May 28th, and that afterwards at the regular June term, he filed his motion to quash the information without first obtaining leave of court.

On this motion being overruled, and after the jury was sworn, defendant was again arraigned against his objection and exception. Generally matters of demurrer are waived by a plea to the merits. Though in practice, both civil and criminal, the answer of plea of not guilty is frequently withdrawn and a demurrer filed. They are inconsistent pleading and do not stand together, and a demurrer, when filed after a plea to the merits, would doubtless operate as a withdrawal of that plea. So too, at this day, motions to quash, in most instances, and demurrers, are without distinction. A motion to quash may reach outside the record and is only reviewable by being made a part of the record by a bill of exceptions. *State v. Wall*, 15 Mo. 208.

Allowing, then, the same rule to operate on a motion to quash, when it is in the nature of a demurrer, it would still not aid defendant's objection. He denominated his motion, as a motion to quash the information, whereas it is in fact merely a plea in abatement, on the ground of the pendency of another information. It is the only

cause alleged in the motion. There was no proof offered to sustain it. We think it was such a motion as is covered by section 1846, Revised Statutes, where it is enacted that : "No plea in abatement, or other dilatory plea to an indictment or information, shall be received by any court, unless the party offering such plea shall prove the truth thereof by affidavit or some other evidence."

The motion, then, being merely a plea in abatement, should not have been entertained by the court, and it did not have the effect of withdrawing the original plea of not guilty. The second arrraignment, though improper after the jury was sworn, was unnecessary.

II.   The offer of proof of the establishment of a public road by the county court at another place, and that the road overseer had, by mistake, worked the road on defendant's land, was for the purpose of showing that the defendant had not dedicated the road in question.   On the question of dedication the evidence would have been relevant, but no such question is presented in the state's case ; it is a question of adverse possession only. For this reason the court properly excluded the testimony.

III.   The first instruction for the state is complained of for the reason that it did not, in terms, require the adverse user by the public to be continuous and uninterrupted for the statutory period of limitation.   The instruction, as framed, would appear at first glance to be supported by the *State v. Walters* (69 Mo. 465), in which case the language of the opinion would lead one to believe these words unnecessary.   I think, however, the court, in that case, was criticising the action of the lower court in directing the jury that the period of limitation was twenty, instead of ten years, and did not intend to assert the doctrine, that there may be an adverse possession which has not been continuous or uninterrupted.   For it is familiar law, that if the adverse occupancy is once broken, the period of limitation begins anew, as though there had been no prior possession.   Notwithstanding

there may be error in giving this instruction, I think it cured by the following given at defendant's instance:

"7.   Unless the jury believe from the evidence that defendant has obstructed a track which has been continuously and uninterruptedly used, and adversely occupied by the public as a public road for a period of ten years or more prior to the alleged obstruction, they will find the defendant not guilty."

There is no just ground to believe that the jury was misled by these instructions when taken together.

IV.   There is no merit in the sixth objection, for the reason that the special judge was chosen by agreement under section 1880, Revised Statutes. No order for an election was necessary, and as the agreement itself disclosed the regular judge's disqualification there was no necessity of that judge having it entered of record.   The statute nowhere requires it.

V.   The objection that the special judge did not take the proper oath on assuming the duties of his office, is plausible, to say the least.   He is required by section 1879, Revised Statutes, to subscribe to an oath that he will try the cause "without fear, favor, or partiality."

These words were omitted in the oath taken.   The oath taken is the one prescribed by section six, article fourteen, of the state constitution, which is that "all officers, both civil and military, under the authority of this state, shall, before entering upon the duties of their respective offices, take and subscribe an oath or affirmation, to support the constitution of the United States and of this state, and to demean themselves faithfully in office."

It cannot well be contended that the words of the oath prescribed by the statute shall be literally followed; and the real question is, is not the oath required by the constitution, and which was taken by the judge in this case, of the exact import of the one required by the statute.   The constitutional oath is, that he will faithfully demean himself in office; the statutory oath is,

that he will exercise his office without fear, favor, or partiality. If he discharges his duties faithfully, he does so, without fear, favor, or partiality. If he discharges his duties with fear, favor, or partiality, he proves unfaithful to his trust. I regard the requirement in the statutory oath as fully covered by the constitutional oath. This view makes it unnecessary to consider whether the legislature has the power, under the constitution, to prescribe an oath different from that required by the constitution.

VI. As the state seeks to establish the legality of the road solely by adverse user, I am of the opinion that the court below should have permitted defendant to prove that his grantor was a married woman who had married in 1868, and who had owned the land on which the obstructed road ran, since 1861. That she was a minor at the beginning of her ownership in 1861, and was yet a minor when she married in 1868, and that she and her husband conveyed to defendant in 1883, less than three years before he is charged to have fenced and taken possession of the road. If all of the state's evidence showed the adverse use by the public began prior to the time when defendant's grantor married, the court's action in excluding the testimony offered, would have been correct, because, notwithstanding it began while she was an infant, and that she married while not yet of age, yet the two disabilities of infancy and coverture could not be tacked. But that portion of the testimony showing the adverse occupancy began before defendant's grantee's marriage, may not have been credited by the jury, while that showing an occupancy for more than ten years since the marriage and before the obstruction, may have been the evidence upon which the jury based the verdict. If the occupation by the public was begun after defendant's grantor married, limitation would not run in favor of the public until the removal of this disability, and she would have three years after its removal, or her grantee would have three years after sale to him,

as he would take her position with reference to her rights connected with the property. *Schultz v. Lindell's heirs*, 40 Mo. 330–356. If the use of the road by the public began while defendant's grantor was the owner of the land over which it ran, and while she was a married woman, such use and adverse occupancy would have no effect as against her rights.

The fact that the husband was entitled to the possession of her land does not alter the case. His action or acquiescence could not estop her.

The effect of section 3295, Revised Statutes, is to deprive the husband of his common law marital rights, so far as any power to convey during coverture the "rents, issues and products, or of any interest in such real estate" unless by deed, etc. This doctrine applies as well to matters set up as estoppel *in pais* as to deeds or other conveyances. *Kanaga v. Ry. Co.*, 76 Mo. 207, overruled ; *Mueller v. Kaessman*, 84 Mo. 318.

For the error in excluding the coverture and ownership of defendant's grantor the judgment will be reversed and the cause remanded. The other judges concur.